United States v. Chang and Mr. Kaplan, whenever you're ready, we'll hear from you. Are you here in the courtroom? Okay, good. Good morning, Your Honors. My name is Matthew B. Kaplan and I'm here for Appellant Chang. Let me start with the argument that we started with in our brief, that our position is that the increase in the sentence of supervised release that was imposed on Mr. Chang after the remand that was significantly greater than the supervised release sentence that was initially imposed. Just at the outset, and I don't want to disrupt your train of thought, so keep it in mind, but as a very preliminary matter, both sides seem to suggest that this was an increase sentence. The prior sentence was 72 months and four months supervised release. And this sentence was 69 months and 10 months of supervised release. And while the supervised release went up, the incarceration went down. And I don't know if you asked a defendant which sentence he would prefer. He might very well prefer the 72 months and the four things. But it seems to me it's not a slam dunk or obvious that a reduction in incarceration with an increase in supervised release is necessarily a heavier sentence. But you can address that briefly sometime during your... Yeah, I can address that now. And it's 10 years of supervised release, correct? Yes, 10 years. I'm sorry. No, I misspoke. Four years to 10 years. And a reduction from 72 months to 69 months. The first thing I'd say about that, Your Honor, is I think that's been forfeited. I mean, that's an argument the government could have made and opted not to make. I think probably this is not a very good argument. Well, it may be. You may be right on that. On the other hand, if we're going to apply Pierce, we would have to assess that as part of the Pierce presumption, seems to me. I can also tell you, I think, and again, we didn't get into this in any, it's discussed a little bit in our opening brief, but we didn't get into this into our rebuttal because the government had not taken that position. I can tell you from Mr. Chang's perspective, he would much rather have a much lesser sentence than supervised release than, you know, compared to that, there's three months additional period of incarceration. I suppose, and I don't want to beat this issue up too heavily, but obviously if it went, if the court had cut incarceration in half and gave the 10 years of supervised release, that might present a different picture, you think? I mean, it's a question of degree, isn't it? It might, Your Honor, but there's a Supreme Court precedent that we argue in an opening brief is that you've got to look at the two prongs, the supervised release and the incarceration separately. And there's a Supreme Court precedent that says that. Yeah, but it's a question of whether the sentence is heavier, not one component. In other words, my hypothetical would be if the court cut incarceration in half but extended supervised release, let's say just to eight years, cut incarceration in half and doubled supervised release, a case could be made. I mean, you know, the Smith case that followed Pierce sort of tempered Pierce and talked about the flexibility that judges do have in re-sentencing because, as you know, under Pepper, the district court is supposed to re-sentence on a clean slate. And so go on with your argument. I understand your position and the facts of this case are reduction from 72 to 69 months and increase from four years to 10 years. And one other point I'd make on that, Your Honor, and we discussed this a little bit in our opening brief, is the Supreme Court precedent is that, you know, there have been instances in which, you know, someone's on, say, 10-year supervised release and they had a four-year sentence and that was vacated after the sentence was served. And, you know, people have made the argument that, well, hey, you should reduce the supervised release because the incarceration sentence was reduced and obviously it's been served already. But the Supreme Court said, no, there are two different things, the incarceration and the supervised release. You've got to look at them independently. That's not directly on point, but I think that strongly suggests that even in the scenario that you're talking about, you've got to look at the two prongs separately. Because the presumption arises from a heavier sentence, not a component of a sentence. I mean, just take this, let's go to the absurd hypothetical, which is the court reduces incarceration to one-third and increases supervised release by two years. It seems to me any prisoner would prefer to take one year or two years in prison as opposed to six years in prison and add two years of supervised release. I mean, we're focusing on a presumption of vindictiveness. And the question is, what gives rise to vindictiveness? And if a court exercises flexibility in readjusting a sentence, the Smith case points out that that is not evidence of a reasonable likelihood of vindictiveness. So I raise that point, you're correct, the government seemed to just assume that it was heavier and maybe it is. I mean, I'm not locked into one way or the other at this point, but I was curious about it because everybody seemed to overlook the fact that the court did indeed reduce the incarceration. But go ahead. And again, I think in this case, incarceration was reduced a tiny bit. But supervised release was increased by two-and-a-half times what it was before. And supervised release is no walk in the park. It's pretty onerous conditions for 10 years with nothing new happened between the prior sentencing and the resentencing other than a change in the sentence. Yes, Your Honor, under the specific conditions of this supervised release, if my client takes a sip of, nine years after his release, he takes a sip of alcohol, or actually he makes a credit card charge without getting his probation. He can be sent back to, he can be revoked and sent back to prison. So it's pretty onerous. And what reason did the district court give for changing this? The district court did not give any reason whatsoever for changing it. The district court stated that, immediately before, and it was not requested by the government. It took everyone by surprise at the hearing because it certainly didn't appear to be a contested issue. The government asked for the same sentence of incarceration and I think everybody assumed that my client would get the same period of supervised release. And even the sentence of incarceration was far in excess of what the recalculated guideline range was. Exactly, Your Honor. And to get to your question, the district court's rationale, again, this is not something that had changed from the initial sentence to the second sentence. But the district court's rationale was that, hey, most of your life you were a law abiding, you served in the Air Force, and then you turned wholeheartedly to a life of crime, which is a factual matter. And was also in the original pre-sentence report.  Could you address Singletary too? And how that helped you? Yeah, I think Singletary helps a lot in that it restates, I mean it's really not new law, but it restates the proposition that it is well established. It is well established that for decades that this principle, if you have the same judge on remand, there is a presumption of vindictiveness that arises if the second sentence is longer. And Singletary acknowledged, didn't it, that all the courts of appeals require an objection on vindictiveness grounds to preserve de novo review, is that right? That's true, Your Honor. Our view would be that this is one of those narrow classes of structural errors which is preserved even if there's no objection. But no court has held that. No court has held that, Your Honor. And even if everyone was taken by surprise, no one actually objected. That is correct, Your Honor, that no one objected. The point I would make is that a biased judge is considered a structural error. A judge in this situation, I think, would be, the indicative judge would seem to me to be in the same category. I think a presumption of vindictiveness might be different than actual vindictiveness, right? But I just want to flag Singletary seemed to accept what the other courts of appeals have done in applying plain error review. Now, that doesn't mean you don't have an argument here on the error and whether it was plain. But there's a standard of review question as well. That's correct, Your Honor. And if it is plain error review, what is your argument? I think it's clear that the plain error test has been met. I mean, there was an error. I don't think there's any doubt about that. The error is plain. Singletary makes the point that this has been the law for decades. And it affects Mr. Chang's substantive rights because he'll be subject to supervised release for a much longer time period. And I think also we meet the requirement that allowing this error to go uncorrected would result in a miscarriage of justice or would otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings. And then getting beyond vindictiveness, if we don't agree with you there, what's your argument that the sentencing was substantively unreasonable? I think it was substantively and procedurally, for that matter, unreasonable because the district court didn't give any real meaningful explanation as to why he departed so drastically. I mean, the supervised release period was, you know, two times the guidelines max and the incarceration was 50 percent over the guidelines max. And, you know, reading the transcript, it's clear that the district court's principal motivation was its view that Mr. Chang had lived a great, I mean, the court said that, lived a great life, contributed to society, member of the Air Force. And then all of a sudden, shortly before the instant offense, maybe in the mid-2010s, had suddenly jumped wholeheartedly into a criminal lifestyle. And to our view, that's wrong on two levels. I mean, for one thing, the fact that he was a productive citizen who was in the Air Force, that would seem to weigh in favor of a lower sentence. But more importantly, there's simply no evidence that he had jumped into a criminal lifestyle. The district court itself said he's got basically almost no criminal history. I think the court was troubled by just the opposite. The court noted that there was no life motive for him to get into crime. He came from a good family. He was educated. He had served in the military. And all of a sudden, he jumped off into this, which made him especially unpredictable. He did not have the traditional or more common situation where he grew up in very tough circumstances, was abused, or whatever what we see in a lot of the criminal cases. And the court was impressed by the fact that he, from that very good platform, he fell off into a life of crime. And I think the supervised release, the court was thinking, was that that is a risk that it wanted to prevent, that he would just jump off that shorter. That's what the court's explanation. There was no explanation for the defendant's conduct in the circumstances. And in that view, he should be supervised. I think that's where the court came. Now, it didn't link that. It said that just before it imposed the sentence, but it didn't explain particularly why it increased the supervised release with a specific explanation. I think that's right. It didn't give an explanation. But perhaps more fundamentally, there's simply nothing on the record that supports this assertion that he had jumped wholeheartedly. Oh, sure there is. I mean, the whole background, the court outlined it in detail. I mean, he'd had a mother and a father who were supportive. The family was together. It was not a broken family. He had a brother. He was estranged from the brother, I guess. But he had an education, finished college. He had an honorable discharge from the military. And here he was in his 30s with life before him. And he jumps off into money laundering and other crimes. And the court said there was no explanation for that. Well, Your Honor, I think the only – I mean, I know the only significant crime in Mr. Chang's history is this instance for which he was convicted. And that's totally appropriate. He should be – it was a significant crime. And the sentencing guidelines sort of gives you guidance. Well, the court, I think, pointed to the money laundering, too. I'm not sure. I thought it recited that as part of the life of crime that he had fallen into in the mid-30s, when he's mid-30s, 35 or 34, what he was. Your Honor, what the court said, at least at the initial sentencing, was that it was pretty clear it wasn't – the court was not terribly troubled. The whole point was, though, the court did have evidence before it of an unexplained fall-off from a life that was generally supportive of him to a life of crime. And that troubled the court. The only point I'd make, just very briefly, is that I think it's – the district court seemed to recognize that that was not a very serious crime. He was not even given probation for that conviction, one criminal history point. And I think to look at that and say that this indicates he had a life of crime, I think that's just not factually supported. Well, did he have – was he – did he have a life of anything else at this point, at the time he was before the judge? I mean, he wasn't employed, was he? I don't believe he was employed at the – I think his only life was these – this conduct for which he's being – which is before us now. There's no dispute that he – this was a criminal act for which he was convicted of a significant crime. I'm not taking issue with that. All right. Thank you. Thank you. And we'll hear from Ms. Bedell. Thank you, Your Honor, and may it please the court. My name is Zoe Bedell, and I'm representing the United States. I'd like to start with the fact that the judge below, Judge Gibney, created a 10-page record just in explaining the sentence that he handed out. He, in fact, went above and beyond what this court has traditionally required for procedural and substantive reasonableness. So this court has held you don't have to go through every single 3553A factor, but Judge Gibney did. He even discussed the ones that he didn't think were that relevant or applicable here. All right. I agree with you. It's a very complete record. He was – I think he was fairly transparent as what he was doing. The question remains, he was sentenced originally to 72 months and four years of supervised release. We reversed because he considered the mandatory minimum, which was an error of law. And so now he's resentencing, and he comes up with a different sentence, arguably heavier. And the question is, what is the explanation for the difference between when he's sentencing initially and sentencing in secondary? And Pierce suggests that if it is heavier, there's a presumption. Now, I do recognize that Smith says not every increase in sentence leads to that presumption, and it starts backpedaling on the mechanical application of Pierce. But you still have to look to the circumstances and the reasons why the sentence was made heavier if that's what it was. Yes, Your Honor. So here, Judge Gibney explicitly justified the sentence of supervised release, which this court has held that otherwise you don't necessarily have to address it specifically. Why didn't it do it on the first time around? Why didn't he address it the first time around? Why didn't he give him 10 years on the first time around? Your Honor, I think he perhaps – he didn't explain why he didn't do it on the first time around. And I think to the extent that this court is looking through the record and said, this first time I gave sentence X, this time I'm giving sentence X plus Y. And why is it that he gave a supervised release sentence two and a half times what it was before and an imprisonment sentence in excess of the recalculated sentencing guidelines? What was his reason? So the reasons were – so I can take those in two parts. So specifically for the supervised release, he called out this wholehearted jump into crime and the adoption of the life sentence. And how is that – was that – I mean, his life history and his really lack of criminal history was in the initial pre-sentence report. So what changed between the first sentencing and the second sentencing other than he won on appeal? There were some important new facts that were in the record, particularly related to his substance abuse. So first, while it was clear on the first sentencing that he had an alcohol problem, at the second sentencing the defense counsel actually introduced a medical record that included an official diagnosis of severe alcohol use disorder. So that was substantially more significant than I think the court would have understood his alcohol problem to be the first time. And the other – So wait, so having an alcohol addiction, that's why he got a greater sentence? Your Honor, I believe – so he also had a cocaine addiction, and he had underplayed that before the first sentencing. In fact, he told probation – And he still had no criminal history at the second sentencing. It's the same lack of criminal history, correct? He did have a criminal history. Isn't it – isn't it – he had a criminal history – right. Okay, he had the same criminal history – I'm sorry, he had the same criminal history. Criminal history category one, was it? Correct. The lowest. Yes. Which was part of the problem, allegedly part of the problem, that he jumped into criminal conduct. Isn't it – it seems substantively unreasonable to sentence a defendant to twice the top of the guideline range solely based on the fact that he had no criminal history or a very low criminal history. That seems to be flipping the – sort of the factors you would consider it sentencing and the safety valve on its head, and to be substantively unreasonable. Your Honor, this court has made clear that the district courts have extremely broad discretion in how it weighs the factors. The question in substantive reasonableness is, did they consider the factors? And did they consider – and did the reasons that they give tie to those factors, and are they plausible? And so certainly defense counsel has argued that that makes them less culpable. But on the other hand, he had come from a situation where he had every advantage in life and didn't have to end up in a situation where he is – So it doesn't matter. So you can have every advantage in life and still be sentenced harshly, and then no advantage in life and still be sentenced harshly. That is within the discretion of the – I mean, what about Campbell, his co-defendant? Did he have every advantage in life? I don't know a lot about Campbell's – He wanted to sentence them, or at least at the initial sentencing, the district court said he wanted to make sure there wasn't a disparity, so they got at least the same sentence of imprisonment. What was Campbell's supervised release sentence? Your Honor, I'd have to double check the record for that. Well, I know it wasn't 10 years. I don't believe it was, Your Honor. But I also think that given that Mr. Chang had this much more severe than previously understood substance abuse problem, both related to the alcohol use and related to the cocaine, and the judge made it clear on the record that he believed that substance use had contributed to this leap into crime, I think it is perfectly reasonable, and in fact the judge made the record, that he needs more support when he gets out to make sure that he has the systems he needs to stay out of crime and continue on the path that he should have been on. I also do want to make clear, Your Honor, that it wasn't simply his background. That substance abuse issue sort of makes the point of why supervised release is more onerous sometimes than prison, because as opposing counsel said, if he drinks, if Mr. Chang drinks on supervised release, he could be revoked and resentenced to even more incarceration. Correct? Yes, that is possible. I will say that is typically having a sip of alcohol does not generally land you back in jail immediately. Based on the concerns of the district court, if it goes back to the same district court, if the court was so concerned about the alcohol addiction, I don't know we can say that that would not happen to Mr. Chang. I think there is, so one of the conditions, Your Honor, was that he seek alcohol treatment and support, and I think a pretty basic, this is not on the record, but it is fairly well understood that sometimes Does the government concede, though, that the second sentence was more severe than the initial sentence? Your Honor, we didn't address that specifically, and I don't think there's a lot of clear case law on that topic, and I think that given the robust record here, and particularly the fact that it is plain error review, and that this court and the Supreme Court, I am not aware of any case where the judge has offered an explanation for the sentence and the court has nonetheless found a presumption of vindictiveness and remanded on that basis. Okay, let's go back to my question. Does the government concede that the sentence was more severe than the initial sentence? Your Honor, I don't think that there is clear guidance on how to assess that. But I'm asking, so you I think we can assume that You can't look at numbers and decide whether one's higher than the other? You can decide, but I don't think it doubles four inches. Is ten higher than four? Ten is higher than four.  So certainly And otherwise you don't have a position on behalf of the United States as to whether a ten-year supervised release sentence is more severe than a four-year supervised release sentence. Oh, no, I apologize, Your Honor. A ten-year supervised release sentence certainly is more severe than a four-year. But of course, Pierce focuses on the sentence, not on a component. And I apologize. That's what I was addressing, and I think there's a lack of guidance on how you combine those and consider those. And was the 72-month sentence on resentencing higher than the recalculated sentencing guideline? Yes, it was an above-guideline sentence, Your Honor. Is that the question for vindictiveness? I thought it was whether the sentence is lower than the first time, not whether it's higher than the guideline. Whether the sentence is higher than the first time, Your Honor, yes. And so certainly the guidelines can place them Well, actually, I don't know if the guidelines particularly play a role in the vindictiveness analysis, yes, Your Honor. But yes, it was an above-guideline sentence. My hypothetical to your colleague was what if the court decreased the incarceration in half and doubled the supervised release? If you just looked at the supervised release, it looks like it's a heavier sentence, but he cut the incarceration in half. And it seemed to me you have to look at the whole sentence under the presumption because the idea is the sentence heavier. Yes, Your Honor. And I acknowledge that there's not much guidance on this and how you weigh the two, but there was a reduction in incarceration and an increase in supervised release. And I also agree with Judge Thacker that the reduction in incarceration is in smaller proportion than the increase in the supervised release. Yes, absolutely, Your Honor. But I do think that the court has indicated you should be looking at the sentence as a whole and what that means for assessing an increase. I think there's probably some difficult questions in there, and so without that having been fully briefed, I think at this point it probably makes sense to just assume that it has been increased and look at the other factors, which again I think point very clearly in favor of Judge Gibney having done a careful, thorough resentencing that was explained on the record. And I did mention the point about... The question, you know, we have Pierce and we have our Singletary, which applies Pierce, I think, correctly. But we do have the Supreme Court's subsequent cases, and there are several of them, and they're clearly walking back the harshness or the mechanical application of Pierce. They say not every increase is necessary, and there has to be recognized some flexibility in sentencing. The question I have is whether a fulsome record, with the court explaining resentencing as it's required to do under Pepper on a clean slate, whether a fulsome record is sufficient to indicate that the court was not being vindictive but being reflective and exercising its discretion in sentencing. I'm not aware of a case that says that, but I'm wondering what your position is on that. Yes, Your Honor. I think a fulsome record is relevant, absolutely, and can certainly either rebut the presumption or prevent it from arising in the first place, depending on where you put that in the analysis. I would also direct the court to the cases Williams and Johnson in the Eighth Circuit and Sixth Circuit, respectively, which were cited in our briefs. And those were... In Singletary, there was a very robust record specifically addressing the increase, I think using the words, you know, increase, which, to be clear, this court has never required specific words. But in Williams and Johnson, the discussion certainly indicates that these were... You know, the court created a full record. They considered the 3553A factors, and that explained the sentence, and there wasn't a reason to presume vindictiveness. Those are both also plain error cases, and the court... I'm sorry. Can I go back to... What was the change? I want to make sure I understand what you said, what changed between the initial sentencing and the resentencing. And it's this medical record that was in... that was put in evidence about his alcoholism. Is that it? That is one of the pieces, Your Honour, that included the diagnosis. Right, but that... His alcoholism, everybody was aware of his drinking problems in the first sentencing, correct? They were aware of his drinking problems, yes, Your Honour, but I would submit that drinking problems are different than a diagnosis. What year was the medical record? Was it while he was in prison? So I'm not sure, Your Honour, but I think the relevant point is that that information was not in front of the court. So whether or not he had this disease before, the question is what information was in front of the court at the time. And again, same with the cocaine addiction, presumably while he'd been in jail, his cocaine problem, which he did with white friends, didn't expand into a cocaine addiction while he was in jail, but that information hadn't been in front of the court. And the Supreme Court and this court have been clear... So his conduct didn't change from the initial sentencing to the resentencing? In fact, he probably wasn't drinking or doing cocaine at least as much in prison. We can hope so, Your Honour. So I'm not aware of actual conduct that intervened, but again, I don't believe that's the standard. The question is what is in front of the court and what is the court aware of? And a clear example of that is in a case where a guilty plea to the second resentencing was after trial, and the Supreme Court has recognized that significant new information comes out about a defendant, about the nature of the crime, about the scope of the conduct at trial, that it all happened before. It's the conduct that he had previously pled for, but we have a fuller understanding of it now at the second resentencing. The Supreme Court has also recognized that ignoring that information would actually be a violation of the court's obligation to consider the whole defendant and consider all of the objective information on the record. And again, Judge Gibney did that. He noted these things. He specifically justified the supervised release sentence. He hadn't done that. He had not mentioned the supervised release sentence at the first sentencing. And so to me, this reads as a judge who understands that he's required to explain his sentence and any increases and made that record and tied it to the explanation for the rest of the sentence as well. Anything else? Not unless there are further questions for me. Thank you, Mr. Bedell. Thank you, Your Honor. All right, Mr. Kaplan. Yes, let me address this issue which President Konstantinovich discussed of Mr. Chang's drinking problem. I mean, that simply was not new. Mr. Chang had a significant drinking problem. It was known to the judge at the initial hearing, at the initial sentencing. It was known to him at the second sentencing. There was really no information. It was, you know, and also on this cocaine issue, you know, I think the record is actually... You mean there was no new information? There was absolutely no new information. The government actually says in its brief that Mr. Chang had a recent bout of alcoholism, suggesting that might be new information. But that's not true. I mean, there's nothing in the record that supports that. As far as I know, there's nothing extra record that would support that. And he had some... He'd used cocaine, but I don't... I mean, the way he described it, that was not necessarily an addiction. It was something he used, and he said he was kind of afraid to use cocaine because he thought it might be contaminated by other substances. And maybe the more important point is the district court, you know, if it felt that there was a reason based on alcoholism or based on anything else to increase his sentence, it needed to say so. It should have said so so Mr. Chang's attorney might be able to respond to it and so this court could do appropriate appellate review. That was not done. The codefendant, Mr. Chang's codefendant, his sentence was 72 months, and I think that was... which was way below the guideline range. Very significant criminal history, unlike Mr. Chang. It was a level two, wasn't it, I think? I think Campbell had a level two, got 72 months. Yeah, I had thought it was more, but you may well be correct. I know he had a prior conviction. Yes, yes. And what did Campbell get for supervised release? I believe it was four. I think they both got the initial sentence. Four years that he got. And again, in the initial sentencing, I mean, the judge was quite clear that he wanted to link the sentence. He said Mr. Chang was basically equally culpable as Mr. Campbell. And wanted to avoid sentence disparity. Right, except for the... I'm not sure that made much sense because Mr. Chang had a much lower criminal history, so if they were both equally culpable, you would think he would get a significantly lower sentence, but the district court did not. Of course, Chang was the middleman, and there was evidence that he was also shipping to somebody in Hawaii, and it seems to me the court made clear that the middleman is more dangerous and problematic than the person on the street who receives it. They're all bad. I mean, the dealers, middlemen, and the sources. We don't know where the sources were, but I think that impressed the court also. He did not want to have Chang to have a lower sentence than Campbell because he was the middleman. He supplied Campbell. Well, it was a disputed issue, Your Honor. It may be disputed, but I'm reflecting on what the court was concerned about. Well, I mean, certainly the court made some statements to that effect initially. He made statements about that. He talked about how he was a middleman, he was a distributor, and it was of substantial drugs and that he not only distributed to Campbell, but he distributed to somebody in Hawaii. We didn't know anything else, but the fact is the court recognized that when you're looking in a drug organization, the higher-level drug dealer deserves a sentence maybe greater than the street-level distributor. Well, the only thing I'd say to that is at the end, after hearing argument and evidence, the district court said, you know, basically he said, I think these two individuals are at an equal level. Well, I don't know if he said that. In terms of culpability. I think Chang got the benefit of the level one, where I think Campbell was at level two, which pushed him up, and the court acknowledged that, but still said, I'm focusing on the conduct, and I think the conduct of Chang should not be treated less than Campbell's. The one other thing I wanted to mention, Your Honor, was... I mean, this was a very complete record. We can't fault that. I think you could fault the fact that there was no explanation for the increased sentence, but it certainly is a lengthy record. The one thing I wanted to mention, Your Honor, was you discussed how, correctly, how Smith versus Alabama reduced somewhat the scope of Pierce. But I think what's crystal clear after that case, and it was reiterated by this court in Singletary, that in some situations, maybe that Pierce presumption doesn't apply, even though if you just read Pierce, maybe you would think it was much broader than the way it's been interpreted now. But I think where the cases leave it is that it's crystal clear that on remand to the same judge, and a second sentence is higher, there is a presumption of vindictiveness always in those cases. And it can be rebutted if there's some explanation for the longer sentence. I don't think there's any uncertainty about that going along. All right. Your time is up. Thank you. I understand you're court-appointed. Is that right? Yes, Your Honor. I want to recognize that. As you know, that's an enormously important thing. You've done a very good service for your client on this, and we thank you for doing it. We'll come down and greet counsel after adjourning court. Signee die. Thank you, Your Honor. This honorable court stands adjourned. Signee die. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Stephanie D. Thacker, Allison J. Rushing